United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIMBERLY SOTO,<br>　　　　Plaintiff,<br>　　v.<br>NANCY A. BERRYHILL,<br>　　　　Defendant. | Case No.17-cv-02565-JSC<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 14 & 20 |

Plaintiff Kimberly Soto ("Plaintiff") seeks social security benefits for a combination of mental and physical impairments, including: lower back pain, right wrist pain, left hip pain (post-total hip replacement), anxiety, depression, and insomnia. (Administrative Record ("AR") 225, 258, 264, 270.) Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying her benefits claim. Now before the Court are Plaintiff's and Defendant's Motions for Summary Judgment.[1] (Dkt. Nos. 14 & 20.) Because the Administrative Law Judge improperly weighed the medical evidence, erred in his Step Three analysis, and failed to support his adverse credibility finding with clear and convincing reasons supported by substantial evidence, the Court GRANTS Plaintiff's motion, DENIES Defendant's cross-motion, and REMANDS for further proceedings.

**LEGAL STANDARD**

A claimant is considered "disabled" under the Social Security Act if she meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 9 & 15.)

First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that she is unable to do her previous work and cannot, based on her age, education, and work experience "engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: (1) whether the claimant is "doing substantial gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's "residual functional capacity," the claimant can still do her "past relevant work"; and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012); *see* 20 C.F.R. §§ 404.1520(a), 416.920(a).

## PROCEDURAL HISTORY

In August 2013, Plaintiff filed an application for Supplemental Security Income ("SSI") under Title II of the Social Security Act. (AR 169.) Plaintiff alleged disability beginning April 4, 2012 caused by lower back and hip pain which prevented her from sitting, standing, walking, bending, lifting, reaching, twisting, and kneeling for long periods of time. (AR 169, 210.) The applications were denied initially and on reconsideration. (AR 11.) Plaintiff then filed a request for a hearing before an ALJ. (*Id*.) On November 13, 2015, a hearing was held before ALJ Henry Koltys, in Santa Barbara, California, during which both Plaintiff and a vocational expert ("VE") Abbe May testified. (AR 24.)

### I. The ALJ's Findings

On December 10, 2015, the ALJ issued a written decision denying Plaintiff's application and finding that Plaintiff was not disabled within the meaning of the Social Security Act and its regulations taking into consideration the testimony and evidence, and using the SSA's five-step

sequential evaluation process for determining disability. (AR 11-19.); *see* 20 C.F.R. §§ 404.1520(a), 416.920(a).

At step one, the ALJ concluded that Plaintiff had not engaged in substantial gainful activity since April 4, 2012, the alleged onset date. (AR 13); *see* 20 C.F.R. § 404.1571 *et seq.*

At step two, the ALJ determined that the objective medical evidence indicated that Plaintiff had the following "severe impairments" within the meaning of the regulations: status post left hip replacement; back; right shoulder, and right wrist pain. (AR 13); *see* 20 C.F.R. § 404.1520(c). The ALJ concluded that Plaintiff's bladder problems were not severe because her treatment records did not reflect ongoing issues. (AR 14.) Similarly, the ALJ found Plaintiff's "medically determinable mental impairments of affective disorder considered singly and in combination, do not cause more than a minimal limitation in Plaintiff's ability to perform basic mental work activities and are therefore nonsevere." (*Id.*)

At the third step, the ALJ concluded that Plaintiff did not have an impairment or a combination of impairments that meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 15.) At this step, the ALJ concluded that her impairments "did not meet or equal any of the criteria set forth in any of the listed impairments set forth in Appendix 1, Subpart P, Regulations No. 4." (*Id.*) In reaching this conclusion, the ALJ "considered the opinions of the State Agency medical consultants who evaluated this issue at the initial and reconsideration levels of the administrative review process and reached the same conclusion." (*Id.*)

The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform light work except that she can "lift/carry/push/pull 20 pounds occasionally, 10 pounds frequently; stand/walk with normal breaks 4 hours of an 8-hour day; sit 6 hours of an 8-hour day with normal breaks; frequently stoop, kneel, crawl; occasionally climb ramps stairs, ladders, ropes, scaffolds; occasionally crouch; and only simple routine tasks." (AR 15.) To reach this conclusion, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this

3

decision." (AR 16.) The ALJ noted that while there are many treatment notes in the record and the claimant has had two surgeries in her left hip, "there is little objective evidence that the claimant was limited to the extent that she could perform no work activity for the required 12-month period" because the evidence shows that "claimant did well after her surgeries." (AR 16.) The ALJ "considered" the statements of Plaintiff's girlfriend, but found that they were cumulative of those of Plaintiff and "the objective evidence provides good reasons for questioning the reliability of the claimant's subjective complaints." (AR 17.) The ALJ also found that Plaintiff stopped work because she was having problems with management and not because of her physical impairments. (AR 17.)

As far as the medical opinion evidence, the ALJ credited the opinion of the State Agency medical consultants because of the "supportability with the medical signs and laboratory findings, consistency with the record, and the area of specialization." (*Id*.) The ALJ also gave significant weight to the opinion of orthopedic surgeon, Dr. Guanche, that Plaintiff had reached maximum medical improvement and could return to work with no restrictions. (*Id*.) The ALJ found that "the claimant's own treating physicians expressed doubt that the cause of her reported pain was related to various body parts, given the lack of objective findings" citing to Dr. Hernandez's initial statement that Plaintiff was not a candidate for a hip replacement, and spinal surgeon Dr. Grossman's statement that Plaintiff did not have a condition within the realm of his practice. (AR 16-17.)

At step four, the ALJ found that Plaintiff was unable to perform her past relevant work. (*Id*.)

At step five, the ALJ found that based on the testimony of the VE that considering Plaintiff's age, education, work experience, and residual functional capacity, the claimant was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (AR 18-19.)

**II.     The Appeals Council**

Plaintiff filed a request for review on December 10, 2015, arguing that the ALJ's decision was against the substantial weight of evidence and that the ALJ failed to consider the relevant

4

1  evidence. (AR 7.) On March 8, 2017, the Appeals Council denied Plaintiff's request for review

2  making the ALJ's decision final. (AR 1-4.)

**III.  This Action**

Plaintiff commenced this action for judicial review on May 4, 2017 pursuant to 42 U.S.C. §§ 405(g), 1361. (Dkt. No. 1.) Both parties thereafter consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 10 & 15.) Plaintiff then filed her motion for summary judgment and the Commissioner filed her cross-motion. (Dkt. Nos. 14 & 20.)

**DISCUSSION**

Plaintiff raises four primary issues with the ALJ's decision. First, Plaintiff insists that the ALJ's assessment of the medical evidence was not supported by substantial evidence. Second, Plaintiff maintains that the ALJ erred at Step Three in failing to consider whether Plaintiff's combine severe impairments met or equaled listings 1.02 and 1.04. Third, Plaintiff contends that the ALJ's credibility assessment was not supported by substantial evidence. Finally, Plaintiff argues that the ALJ's Step Five findings were in error and not supported by substantial evidence.

**I.  The ALJ's Evaluation of Medical Opinion Evidence**

**A. Legal Standard**

Courts must "distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (nonexamining physicians)." *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995) (as amended (Apr. 9, 1996)). "A treating physician's opinion is entitled to more weight than that of an examining physician, and an examining physician's opinion is entitled to more weight than that of a nonexamining physician." *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). If a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). And "even if the treating doctor's opinion is contradicted by another doctor, the Commissioner may not reject this opinion without providing 'specific and legitimate reasons' supported by substantial evidence in the record for so doing." *Lester*, 81 F.3d at 830 (internal citations omitted). Likewise, "the opinion of an examining doctor, even if

1  contradicted by another doctor, can only be rejected for specific and legitimate reasons that are
2  supported by substantial evidence in the record." *Id*. at 830-31.

3  "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts
4  and conflicting medical evidence, stating his interpretation thereof, and making findings." *Cotton
5  v. Bowen*, 799 F.2d 1403, 1407 (9th Cir. 1986). "The opinion of a nonexamining physician cannot
6  by itself constitute substantial evidence that justifies the rejection of the opinion of either an
7  examining physician or a treating physician." *Lester*, 81 F.3d at 831 (internal citation omitted).
8  Ultimately, "the ALJ must do more than offer his conclusions. He must set forth his own
9  interpretations and explain why they, rather than the doctors', are correct." *Embrey v. Bowen*, 849
10 F.2d 418, 421-22 (9th Cir. 1988).

11 "When an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate
12 reasons for crediting one medical opinion over another, he errs. In other words, an ALJ errs when
13 he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it,
14 asserting without explanation that another medical opinion is more persuasive, or criticizing it
15 with boilerplate language that fails to offer a substantive basis for his conclusion." *Garrison v.
16 Colvin*, 759 F.3d 995, 1012-13 (9th Cir. 2014) (internal citation omitted). In conducting its review,
17 the ALJ "must consider the entire record as a whole and may not affirm simply by isolating a
18 'specific quantum of supporting evidence.'" *Hill v. Astrue*, 388 F.3d 1144, 1159 (9th Cir. 2012)
19 (internal citations omitted). "An ALJ may not cherry-pick and rely on portions of the medical
20 record which bolster his findings." *See, e.g.*, *Holohan v. Massanari*, 246 F.3d 1195, 1207-08 (9th
21 Cir. 2001) (holding that an ALJ may not selectively rely on some entries and ignore others "that
22 indicate continued, severe impairment"). "Particularly in a case where the medical opinions of the
23 physicians differ so markedly from the ALJ's[,]" "it is incumbent on the ALJ to provide detailed,
24 reasoned, and legitimate rationales for disregarding the physicians' findings." *Embrey*, 849 F.2d at
25 422.

26 **B. The ALJ Erred in Evaluating the Medical Evidence**
27 The ALJ committed several errors with respect to the medical evidence.
28 *First*, despite the fact that the record in this case totals over a thousand pages, the ALJ's

6

opinion focuses on only a handful of records, often ignoring contrary subsequent opinions by the same physicians. For example, the ALJ cites to Dr. Guanche's September 24, 2013 statement that Plaintiff had reached "Maximum Medical Improvement" and was free to return her usual occupation, but ignores that when Plaintiff saw Dr. Guanche again four months later she reported near constant hip pain which increased with walking after a fall three weeks prior. *Compare* AR 807 (9/24/13 Dr. Guanche report) *with* AR 832 (1/21/14 Dr. Guanche report). At that second visit, Dr. Guanche noted that Plaintiff was using a cane, her range of motion was "very limited," and he opined that she had "hip cam impingement with labral re-tearing." (AR 835.) Dr. Guanche referred Plaintiff for a CT scan. (*Id.*) Plaintiff's pain continued and a year later she had a hip replacement. (AR 953.)

Likewise, the ALJ relies on the fact that Dr. Hernandez initially did not think that Plaintiff was a candidate for hip replacement, but ignores that a year later, Dr. Hernandez performed a complete left hip replacement. *Compare* AR 986 (5/20/14 treatment note from Dr. Hernandez stating that although Plaintiff had severe hip pain he believed it was due to her joint and did not recommend a hip replacement) *with* AR 953 (5/6/15 Dr. Hernandez performs hip replacement).

Finally, in discounting Plaintiff's back pain, the ALJ placed considerable weight on Dr. Grossman's December 8, 2014 statement that Plaintiff did not have a condition within his realm of practice, but ignored the other aspects of Dr. Grossman's report including that Dr. Grossman observed that Plaintiff's gait was slow and guarded, she was markedly antalgic on the left, and she used a cane to ambulate. (AR 969-971.) While Dr. Grossman did not see a basis for spinal surgery, he referred her to Dr. Hernandez for follow-up regarding her left hip pain as well as an upper extremity specialist. (AR 973.) Perhaps most significantly, Dr. Grossman found that Plaintiff "had *not* reached Maximal Medical Improvement"—three months after Dr. Guanche's contrary finding—a conflict which was completely ignored by the ALJ. (AR 973 (emphasis added).) Likewise, the ALJ ignored Dr. Grossman's finding that Plaintiff was limited to lifting no more than 10 pounds and sitting or standing for more than 5 minutes at a time without any

bending, stooping, squatting, kneeling, or climbing, and that she must be allowed to use a cane.[2] (AR 973.) Instead, the ALJ cites to the irrelevant fact that Dr. Grossman concluded that she did not have a condition within the realm of his orthopedic *surgery* practice. (AR 973.)

An ALJ must consider all of the relevant evidence in the record and may not point to only those portions of the records that bolster his findings. *See, e.g.*, *Holohan*, 246 F.3d at 1207–08 (holding that an ALJ cannot selectively rely on some entries in plaintiff's records while ignoring others); *see also Cox v. Colvin*, 639 Fed.Appx. 476, 477 (9th Cir. 2016) ("[A]n ALJ may not pick and choose evidence unfavorable to the claimant while ignoring evidence favorable to the claimant."). Here, the ALJ erred in selectively relying on portions of some physician's findings and ignoring later or contradictory findings that her condition had deteriorated.

***Second***, the ALJ also ignored the treatment notes of Plaintiff's treating physicians. During the 2014 to 2015 period leading up to her hearing before the ALJ, Plaintiff was receiving regular treatment from a variety of physicians—none of these records or findings are referenced in the ALJ's decision.

- 12/10/13 -- Dr. Moelleken of the Spine and Orthopedic Center noted that Plaintiff had low back pain in the 7 to 8 out of 10 range and was taking Norco daily for pain. (AR 820.) Dr. Moelleken found Plaintiff temporarily disabled for six weeks and limited her to sedentary work with back support as needed and limited her to no bending, pushing, pulling, twisting or lifting and 10 minutes of sitting followed by a 5-minute break to change in position. (AR 822.) She was advised to return in six weeks.

- 3/31/14 -- Dr. Moelleken challenged the denial (unclear by whom) of his treatment recommendation for a medial branch block in Plaintiff's back due to her ongoing lower back pain. (AR 898-890.)

---

[2] The Commissioner's argument that the ALJ was entitled to give this opinion less weight because Dr. Grossman was providing his opinion in the context of Plaintiff's worker's compensation claims is unavailing. First, this was not the basis of the ALJ's decision; indeed, the ALJ did not even acknowledge Dr. Grossman's opinion in this regard, he just ignored it. (AR 17.). Second, the argument that Dr. Grossman's opinion is entitled to less weight because it arose in the worker's compensation context is inaccurate. *See Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995) (as amended) ("The purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them."); *see also Booth v. Barnhart*, 181 F. Supp. 2d 1099, 1105 (C.D. Cal. 2002) ("the ALJ may not disregard a physician's medical opinion simply because it was initially elicited in a state workers' compensation proceeding, or because it is couched in the terminology used in such proceedings."). Likewise, the Commissioner's argument that Dr. Grossman did not state that Plaintiff could not work misses the point—Dr. Grossman imposed numerous limitations which were ignored by the ALJ. (AR 968.)

8

- 5/21/14 -- Dr. Moelleken noted that Plaintiff was using a cane and presented with pain at 8/10 with twice daily Norco use. (AR 919.) Plaintiff had a slightly antalgic gait, tenderness of the lumbar spine, and reduced ranged of motion. (*Id*.) Dr. Moelleken found Plaintiff temporarily disabled for six weeks and limited her to sedentary work with back support as needed and limited her to no bending, pushing, pulling, twisting or lifting and 10 minutes of sitting followed by a 5-minute break to change in position. (AR 920.) She was advised to return in six weeks.

- 5/29/14 -- Dr. Burgoyne of the Spine and Orthopedic Center evaluated Plaintiff regarding her shoulder and wrist pain and restricted her to no lifting, pushing, or pulling with the right upper extremity. (AR 891.)

- 7/3/14 -- Dr. Moelleken noted that Plaintiff was taking Norco twice daily for pain and reported her pain at 7/10 with the medication and 10+/10 without it. (AR 915.) Dr. Moelleken observed that she continues to use a cane, has lumbar tenderness, and reduced range of motion. (AR 915-916.) He continued to find Plaintiff temporarily disabled for six weeks and limited her to sedentary work with back support as needed and limited her to no bending, pushing, pulling, twisting or lifting and 10 minutes of sitting followed by a 5-minute break to change in position. (AR 917.) She was advised to return in six weeks.

- 7/17/14 -- Dr. Burgoyne evaluated Plaintiff regarding her shoulder pain and limited her to no lifting, pushing, or pulling with the right upper extremity and gave her a steroid shot. (AR 886.)

- 8/14/14 -- Dr. Moelleken indicated that Plaintiff was taking Norco twice daily for pain and reported her pain at 7/10 with the medication and 10+/10 without it. (AR 910) He found Plaintiff temporarily disabled for six weeks and limited her to sedentary work with back support as needed and limited her to no bending, pushing, pulling, twisting or lifting and 10 minutes of sitting followed by a 5-minute break to change in position. (AR 912.)

- 8/20/14 -- Dr. Kenly of the Spine and Orthopedic Center noted that Plaintiff reported significantly increased pain of the 7/10 range and he was worried about her frequent use of Norco to relieve the pain. (AR 901.)

- 11/13/14 -- Dr. Moelleken reported that Plaintiff was using a cane or walker and complained of increased low back pain. (AR 905.) He found her temporarily disabled for six weeks and limited her to sedentary work with back support as needed and limited her to no bending, pushing, pulling, twisting or lifting and 10 minutes of sitting followed by a 5-minute break to change in position. (AR 907.)

- 1/28/15 -- Dr. Hernandez of the Southern California Orthopedic Institute gave Plaintiff a kenalog and lidocine injection in her left hip. (AR 966-967.)

- 2/12/15 -- Dr. Hernandez's follow-up notes indicate that while the shot helped, Plaintiff was still had pain. Dr. Hernandez agreed to a total left hip replacement. (AR 964-965.)

- 4/29/15 -- Dr. Hernandez's pre-operative treatment notes indicate that Plaintiff was at 5/5 pain and diagnosed her with end stage left hip osteoarthritis (AR 960-962.)

- 5/20/15 -- Dr. Hernandez's post-operative treatment notes indicate that Plaintiff's

9

pain is at a 3/5 and she was on "do not return to work status." (AR 957-58.)

"The decision of an ALJ fails [the substantial evidence] test when the ALJ completely ignores or neglects to mention a treating physician's medical opinion that is relevant to the medical evidence being discussed." *Lingenfelter*, 504 F.3d at 1045; *see also Garrison*, 759 F.3d at 1012-13 ("Where an ALJ does not explicitly reject a medical opinion or set forth specific, legitimate reasons for crediting one medical opinion over another, he errs.") (internal citation omitted); *Marsh v. Colvin*, 792 F.3d 1170, 1172–73 (9th Cir. 2015) ("Because a court must give 'specific and legitimate reasons' for rejecting a treating doctor's opinions, it follows even more strongly that an ALJ cannot in its decision totally ignore a treating doctor and his or her notes, without even mentioning them.").

***Third***, the ALJ found that while there was "some objective findings" regarding Plaintiff's upper extremity pain, Plaintiff did not have extensive or regular treatment. (AR 17.) This finding is inaccurate. In December 2014, Dr. Grossman referred Plaintiff to an upper extremities specialist for her persistent left wrist pain. (AR 973.) In May and July 2014, Dr. Burgoyne prescribed physical therapy and gave Plaintiff a corticosteroid shot. (AR 886; 891.) He also limited her to "no lifting, pushing, or pulling with the right upper extremity." (AR 886; 891.) The ALJ erred in ignoring this evidence. *See Peng See v. Comm'r of Soc. Sec. Admin.*, 500 Fed.Appx. 676, 677 (9th Cir. 2012) (finding that where ALJ's statement as to examining doctor's opinion was "factually inaccurate," it was "therefore not a legitimate reason supported by substantial evidence.")

***Fourth***, the ALJ's decision is likewise factually inaccurate with respect to objective findings supporting Plaintiff's depression and anxiety. The ALJ found that Plaintiff did not have any mental health concerns which would impact her ability to perform work activity. (AR 14.) In support of this finding, the ALJ states "[t]he claimant had some anxiety and depressive symptoms when she was experiencing conflict with her supervisors, but psychiatric mental status examination was normal in February 2013." (AR 14 citing AR 644 (Exhibit 4F at 10).) The ALJ fails to note, however, that when Plaintiff saw Dr. Lish again five months later she complained of feeling depressed and sad and he increased her Zoloft prescription. (AR 641.) Indeed, Plaintiff

10

reports feeling depressed and anxious throughout her subsequent medical records. (AR 906, 910, 915, 919, 936.)

It follows that the ALJ's rejection of the examining and nonexamining physicians' opinions regarding Plaintiff's mental health—based on the same factually inaccurate statement that Plaintiff only infrequently complained of depression and did not obtain specialized mental health treatment—also was in error. (AR 14.) As the foregoing demonstrates, Plaintiff in fact frequently complained of feeling depressed and anxious, particularly in 2014 as her pain worsened. (AR 906, 910, 915, 919.) The Ninth Circuit has repeatedly held that "disabled" in the context of mental health does not require a constant status of severe depression and anxiety. *See Garrison*, 759 F.3d at 1017 (concluding "[a]s we have emphasized while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment.") (citing cases). Further, that Plaintiff did not obtain specialized mental health care is not a legitimate reason for rejecting the opinions of an examining and consultative physician's findings regarding her mental health. *See Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("[a]ppellant may have failed to seek psychiatric treatment for his mental condition, but it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.") (internal citation omitted).

***Finally***, the ALJ gave the most weight to the opinion of the State agency medical consultant "given the supportability with the medical signs and laboratory findings, consistency with the record, and the area of specialization." (AR 17.) This boilerplate statement does not provide a specific and legitimate reasons for favoring the opinion of Dr. Quint over the opinions of Plaintiff's treating and examining physicians. "The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of *either* an examining physician or a treating physician." *Ryan v. Comm'r of Soc. Sec*., 528 F.3d 1194, 1202 (9th Cir. 2008) (citing *Lester*, 81 F.3d at 831) (emphasis in the original). Further, although the ALJ credited his opinion, the ALJ's RFC for light work ignores Dr. Quint's sedentary RFC and the recommendation that Plaintiff be allowed to use a cane. (AR 82.)

Given these errors, the ALJ's findings regarding the medical evidence are not supported by

11

1 substantial evidence.

## II. The ALJ's Step Three Determination

At step three of the sequential evaluation process, the ALJ must evaluate the claimant's impairments to determine whether they meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. See 20 C.F.R §§ 404.1520(d), 416.920(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir.1999). "If a claimant has an impairment or combination of impairments that meets or equals a condition outlined in the 'Listing of Impairments,' then the claimant is presumed disabled at step three, and the ALJ need not make any specific finding as to his or her ability to perform past relevant work or any other jobs." *Lewis v. Apfel*, 236 F.3d 503, 512 (9th Cir. 2001) (citing 20 C.F.R. § 404.1520(d)). The claimant, that is Plaintiff, bears the burden of proving that she satisfied the listing. *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005).

Plaintiff insists that the ALJs' Step Three findings here are deficient because the ALJ failed to: (1) consider whether her combination of impairments met or equaled a listing level impairment, and (2) relied exclusively on the opinions of the state agency medical consultants. The ALJ's findings at Step Three were limited to a statement that Plaintiff did "not meet or equal any of the criteria set forth in any of the listed impairments." (AR 15.) In reaching this conclusion he "considered the opinions of the State Agency medical consultants who evaluated this issue at the initial and reconsideration levels of the administrative review process and reached the same conclusion." (*Id.*)

The ALJ is "required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination" where "the claimant presents evidence in an effort to establish equivalence." *Burch v. Barnhart*, 400 F.3d 676, 683 (9th Cir. 2005). In her pre-hearing statement, Plaintiff argued that she met the listing requirements of 1.02 and 1.04 due to her complaints of pain in multiple locations. (AR 305.) Plaintiff recited the medical evidence in support of her listings argument. The ALJ's decision is devoid of any reference to these listings levels or an explanation of why the evidence proffered by Plaintiff failed to establish that she met or equaled a listing. Even if Plaintiff had not identified the listings in her

12

prehearing statement, the ALJ had an independent obligation to "determine whether the combination of [the] impairments is medically equal to any listed impairment" because Plaintiff had more than one impairment. *Lewis*, 236 F.3d at 514 (citing 20 C.F.R. § 404.1526) (internal quotation marks omitted); *see also* 20 C.F.R. § 416.926. Here, the ALJ found that Plaintiff had severe impairments of "status post left hip replacement; back; right shoulder and right wrist pain." (AR 13.) The ALJ was thus required to consider whether the combination of these impairments met or equaled a listing. "A bare statement that [Plaintiff] does not meet a listing, without appropriate evaluation or discussion of the medical evidence, is insufficient to conclude that [Plaintiff's] impairment does not meet or medically equal a listed condition." *Laborin v. Berryhill*, 692 F. App'x 959, 962 (9th Cir. 2017). Rather, "the ALJ must explain adequately his evaluation of alternative tests and the combined effects of the impairments." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).

The Court cannot consider the Commissioner's argument that there is no evidence in the record that she met Listing 1.02B because it requires "one major peripheral joint in each upper extremity" and requires a joint dysfunction "resulting in inability to perform fine and gross movements effectively," but "Plaintiff never so much as alleged *bilateral* shoulder problems, which would satisfy '*each* upper extremity'" or "an inability to perform fine and gross manipulative movements" because none of this is in the ALJ's decision. (Dkt. No. 20 at 13:24-27.[3]) "We are constrained to review the reasons the ALJ asserts." *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Commissioner's post hoc rationalizations for the ALJ's findings are unavailing. *Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1225 (9th Cir. 2009) ("Long-standing principles of administrative law require us to review the ALJ's decision based on the reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking.")

//

//

---

[3] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

### III. The ALJ's Credibility Determination

#### A. Standard for Assessing Credibility

To "determine whether a claimant's testimony regarding subjective pain or symptoms is credible," an ALJ must use a "two-step analysis." *Garrison*, 759 F.3d at 1014. "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal citations and quotation marks omitted). "Second, if the claimant meets the first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." *Id*. (internal citations and quotation marks omitted). The clear and convincing standard is "the most demanding required in Social Security cases." *Moore v. Comm'r of the Soc. Sec. Admin.*, 278 F.3d 920, 924 (9th Cir. 2002). "General findings are an insufficient basis to support an adverse credibility determination." *Holohan*, 246 F.3d at 1208. Rather, the ALJ "must state which pain testimony is not credible and what evidence suggests the claimant[ ][is] not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993); *see also Ghanim*, 763 F.3d at 1163 ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.") (citation omitted).

#### B. Analysis

Applying a two-step analysis, the ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the type of alleged symptoms," but Plaintiff's testimony "concerning the intensity, persistence and limiting effects of these symptoms" was not entirely credible for several reasons. (AR 16.) Since Plaintiff met the first part of the test, the ALJ could only reject Plaintiff's testimony regarding the severity of her symptoms due to evidence of malingering or by offering specific, clear and convincing reasons for doing so. *See Lingenfelter*, 504 F.3d at 1036. The ALJ erred in rejecting Plaintiff's testimony regarding the severity of her pain because there is no evidence of malingering, and the ALJ failed to meet the demanding clear and convincing reasons standard. *See Moore*, 278 F.3d at 924.

14

As a threshold matter, the ALJ failed to identify which testimony he found not credible. In *Brown-Hunter v. Colvin*, 806 F.3d 487 (9th Cir. 2015), the Ninth Circuit held that where an ALJ made a similar "conclusory statement"—that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment" (AR 16)—the ALJ was required to specifically identify which of the plaintiff's statements she found incredible and why. *Brown-Hunter*, 806 F.3d at 493; *see also Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[T]he ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints.") (internal quotation marks and citation omitted).

First, the Commissioner argues that the adverse credibility finding was based in part on the ALJ's finding that Plaintiff reported substantial improvement after both surgeries, but this is neither in the cited portion of the ALJ's decision nor borne out by the evidence. (Dkt. No. 20 at 15:18-19 (citing AR 15).) While Plaintiff often reported an improvement in her condition following an injection or surgery, her pain recurred. For example, following her first hip surgery in 2013, her pain was better for a few months, but as of July 2013 when she returned to work the pain was severe (AR 636, 639), and in September 2013, she reported severe pain in her left hip (AR 813, 806). After she fell in January 2014, Plaintiff had significant pain in her left hip and shoulder. (AR 833.) In November 2014, she reported she had tried a chiropractor, acupuncture, and lumbar shots for pain relief, but none worked. (AR 905.) At the time of her left hip replacement in May 2015, her pain was at a 5/5. (AR 960.) While that decreased to a 3/5 in her two-week post-operative visit, by the time of her ALJ hearing six months later her pain was at 4/10 in her back and a 3-4/10 in her back, but that would go up to a 6/10 with sitting. (AR 43-44.)

Second, the ALJ found that Plaintiff stopped working not because of her physical impairments—as she had testified—but because she was having problems with the management at her work. (AR 17.) However, the same page of the record cited by the ALJ in support of this finding also states that Plaintiff was currently off work because of back and hip pain and physical therapy was not helping. (AR 663.) Plaintiff was not sleeping well due to her pain. (*Id.*) Two weeks later, Plaintiff reported 24/7 pain and was excused from work for another month. (AR

15

660.) On May 28, 2012, she was excused from work another month because of ongoing pain. (A 657.) As of July 26, 2012, Plaintiff was still out of work due to pain and sought to renew her medical certificate with the DMV to renew her commercial driver's license, but she was not able to do so because of blood in her urine. (AR 654-656.) Plaintiff did not return to work until July 2013, but even then, the pain was too much and she could not continue with the modified position. (AR 639.) The ALJ erred by ignoring this evidence.

Third, while not explicit, the ALJ seems to conclude that Plaintiff's activities of daily living conflict with her claims of disability. The ALJ refers to Plaintiff's ability to perform household chores such as laundry and washing dishes, as well as driving to appointments and stores. (AR 17.) However, this finding ignores Plaintiff's testimony that she has difficulty putting on her pants, socks, and shoes, and sometimes needs help bathing, as well as her testimony that she has difficulty walking, sitting, bending, kneeling, and standing. (AR 39-40.) Further, the ALJ fails to indicate precisely what alleged limitations conflicted with doing the laundry, washing dishes, and driving, which is inconsistent with the Ninth Circuit's specificity requirements. *See Burrell*, 775 F.3d at 1137 (finding the ALJ's rejection of the claimant's testimony insufficient where "the ALJ did not elaborate on *which* daily activities conflicted with *which* part of Claimant's testimony") (emphasis in original). For example, in *Molina*, the Ninth Circuit upheld the ALJ's conclusion that the claimant was not credible because the claimant's "inability to tolerate even minimal human interaction" was inconsistent with the activities of daily living. 647 F.3d at 1113. Here, in contrast, the ALJ generally states that "despite her reported pain, the claimant testified that she is able to perform household chores ... and drive to appointments and stores. (AR 17.) This is not a clear and convincing reason to reject Plaintiff's testimony.

Finally, as discussed at length above, the ALJ committed numerous errors with respect to the medical evidence which undermines his finding that the "objective evidence proposed good reasons for questioning the reliability of the claimant's subjective complaints." (AR 17.) In particular, as relevant to the adverse credibility finding, while the ALJ identified medical evidence that undermined Plaintiff's reports of pain, he ignored all the evidence that supported her testimony. *See Cotton v. Astrue*, 374 Fed.Appx. 769, 773 (9th Cir. 2010) (holding that an ALJ's

16

1  "cherry-picking of [claimant's] histrionic personality out of her host of other disorders is not a
2  convincing basis for the adverse credibility finding").
3    In sum, the ALJ failed to specifically identify which of the Plaintiff's statements he found
4  incredible and why and offer specific, clear, and convincing reasons for reaching that conclusion.
5  *See Brown-Hunter*, 806 F.3d at 494-95.

                \*\*\*

  Given the Court's conclusion that the ALJ's analysis at Step Three was legally insufficient and in error, as was the ALJ's evaluation of the medical evidence and the adverse credibility finding, the Court declines to consider Plaintiff's additional arguments regarding Step Five. The ALJ's errors here were not harmless and thus the ALJ's decision must be reversed. *See Molina v. Astrue*, 674 F.3d 1104, 1122 (9th Cir. 2012) (an error is harmless if it is "inconsequential to the ultimate nondisability determination").

## IV. Remand

  Plaintiff asks the Court to remand for immediate benefits under the credit-as-true rule. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). However, a court may remand for an immediate award of benefits where "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. Each part of this three-part standard must be satisfied for the court to remand for an award of benefits, *id.*, and "[i]t is the 'unusual case' that meets this standard." *Williams v. Colvin*, No. 12–CV6179, 2014 WL 957025, at \*14 (N.D. Cal. Mar. 6, 2014) (quoting *Benecke*, 379 F.3d at 595); *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017) ("where [...] an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency") (citing *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1105 (9th Cir. 2014)). It is only "rare circumstances that result

17

in a direct award of benefits" and "only when the record clearly contradicted an ALJ's conclusory findings and no substantial evidence within the record supported the reasons provided by the ALJ for denial of benefits." *Leon*, 880 F.3d at 1047.

Here, even if the improperly discredited evidence is credited as true, it is not certain that the ALJ would be required to find Plaintiff legally disabled under the third part of the credit-as-true standard. *Leon*, 2017 WL 5150294, at *4. Plaintiff had her hip replacement in May 2015 and there is scant medical evidence in the record regarding her status after the procedure. (AR 953.) At the hearing about six months later, Plaintiff testified that her hip pain was at 4/10, her back pain at 3-4/10, although it increased to a 6/10 with sitting. (AR 43-44.) While this may preclude her from working, the Court cannot say so with certainty because the record is not fully developed on Plaintiff's current limitations. Likewise, while Plaintiff argues that a proper sedentary RFC would render her disabled under the grids, this argument is not sufficiently developed. The Court thus remands for further proceedings so that the ALJ may further develop the record regarding Plaintiff's current medical status and her disability status.

## CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiff's Motion for Summary Judgment (Dkt. No. 14) and DENIES Defendant's Cross-Motion for Summary Judgment (Dkt. No. 20). The Court VACATES the ALJ's final decision and REMANDS for reconsideration consistent with this Order.

**IT IS SO ORDERED.**

Dated: April 25, 2018

_____
JACQUELINE SCOTT CORLEY
United States Magistrate Judge

18